# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUZANNE BUKOFSKI and DAVID BUKOFSKI, HER HUSBAND,<br>    Plaintiffs<br><br>v.<br><br>USAA CASUALTY INSURANCE COMPANY,<br>    Defendant | No. 3:08cv1779<br><br>(Judge Munley) |

## MEMORANDUM

    Before the court for disposition are the following: a motion to dismiss portions of the complaint for failure to state a claim; a motion for a more definite statement; and a motion to strike redundant, immaterial, impertinent or scandalous matter. The matters have been briefed and are ripe for disposition.

**Background**

    Plaintiff Suzanne Bukofski (hereinafter "plaintiff") was involved in a motor vehicle accident on October 11, 2007. (Doc. 4-2, Compl. ¶ 12). Plaintiff sustained injuries in the accident. (Id. at 16).[1] At the time of the accident plaintiff was covered by an automobile insurance policy issued by Defendant USAA Casualty Insurance Company (hereinafter "defendant"). (Id. at ¶ 15). The insurance policy provided ten thousand dollars ($10,000) in medical coverage and underinsured motorist coverage of one hundred

---

[1]Specifically plaintiff suffered the following injuries in the accident: lumbar disc displacement; aggravation of pre-existing degenerative changes in the cervical and lumbar spine; lumbar sprain; cervical pain; lumbar pain; arm pain and arm numbness; left buttock pain; muscle spasm; limited range of motion; anxiety/depression and headaches. (Doc. 4-2, Compl. ¶ 16).

thousand dollars ($100,000) stacked on two vehicles.  (Id.).   Plaintiff asserts that the defendant wrongly withheld medical benefits and underinsurance motorist benefits with regard to the accident.  She thus filed the instant ten-count complaint that asserts the following claims: Count I, Breach of Contract; Count II, Bad Faith, 42 PENN. CONS. STAT. ANN. § 8371; Count III, Unfair Trade Practices and Consumer Protection Law, 75 PENN. STAT. § 201-1, *et seq.*; Count IV, good faith and fair dealing; Count V, breach of fiduciary duty; Count VI, negligence Count VII, negligent infliction of emotion distress; Count VIII, fraudulent misrepresentation/concealment; Count IX, negligent misrepresentation; and Count X, vicarious liability.

Plaintiff filed the lawsuit in the Luzerne County, Pennsylvania Court of Common Pleas.  Defendant removed the case to this court on the basis of diversity jurisdiction, and subsequently filed the motions that are now before the court for disposition.

**Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332.  The plaintiffs are citizens of Pennsylvania, and the Defendant is a Texas corporation with a principal place of business in San Antonio, Texas. (Doc. 1, Notice of removal, ¶ ¶ 5, 6).  The amount in controversy exceeds $75,000.  (Id. at ¶ ¶ 8, 9).  Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Discussion**

The defendant  raises six (6) issues, and we will address them in

*seriatim*.

## I. Count II

First, the defendant claims that Count II of the complaint, bad faith, should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**Standard of review**

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

Defendant moves to dismiss Count II of the complaint on several grounds. We will address each separately.

A. Preemption

Count II of the claim presents a bad faith claim pursuant to 42 Penn. Cons. Stat. § 8371 (hereinafter section 8371), which provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

Plaintiff claims that the defendant violated the policy's implied covenant of good faith and fair dealing, and as such committed bad faith

3

under section 8371. Plaintiff avers that Defendant breached its duty of good faith and fair dealing by trying to strengthen its defense of the UIM Claim in the following manner:

    1) failing to pay the first party benefits to plaintiff;

    2) failing to objectively and fairly evaluate plaintiff's first party medical benefit claim;

    3) refusing to effectuate a prompt and fair resolution of plaintiff's first party benefit claim;

    4) retaining the Peer Review Organization to challenge the reasonableness and necessity of plaintiff's medical treatment so as to force her health care provides to stop treatment necessary for the accident-related injuries; and

    5) misrepresenting Pennsylvania law to plaintiff's physicians.

(Doc. 4-2, Complaint at ¶ 98).

Defendant argues that plaintiff's statutory bad faith claim is preempted by the Pennsylvania Motor Vehicle Financial Responsibility Law (hereinafter "MVFRL"), specifically 75 PENN. CONS. STAT. ANN. § 1797, to the extent that it is based upon the handling of plaintiff's claim for first party medical benefits. Section 1797 provides a cause of action for an insured who has been denied first party medical benefits. If the court finds that the medical treatment for which benefits were denied was medically necessary, the plaintiff may be entitled to the benefits plus twelve percent interest, costs and attorney fees. 75 PENN. CONS. STAT. ANN. § 1797(b)(6). If an insurer does not use the Peer Review Organization mechanism established by the statute, and a court later finds that medical benefits should have been paid, treble damages may be awarded to the plaintiff if it

is determined that the insurer acted wantonly. 75 PENN. CONS. STAT. ANN. § 1797(b)(4). Courts have held that this section preempts a bad faith insurance action with regard to first party medical benefits. Harris v. Lumberman's Mut. Cas. Co., 409 F. Supp. 2d 618, 620-21 (E.D. Pa. 2006).

Defendant argues that to the extent plaintiff's claim for bad faith seeks damages for denial of first party medical benefits, it is preempted by section 1797. Plaintiff argues that her claim is not based upon the handling of the first party medical benefits claim, but rather upon the handling of the UIM claim, which is not preempted by the MVFRL. We are in agreement with the plaintiff.

To address this issue we must examine plaintiff's complaint more closely. Plaintiff claims defendant's UIM adjuster, John Massey, contacted plaintiff's counsel at a point in time when plaintiff had yet to make a UIM claim. (Compl. ¶¶ 34-35). During the conversation with the adjuster plaintiff's counsel indicated that he did not know whether plaintiff's damages would exceed the tortfeasors $50,000 insurance limits and that regardless, plaintiff's medical benefits under the policy had a limit of $100,000.00. (Id. ¶¶ 39-40). The policy actually had a medical benefit limit of $10,000.00, but Massey did not inform plaintiff's counsel of this, thus potentially the UIM coverage would come into play quicker than plaintiff's counsel had believed. (Id.).

After this conversation, defendant began a series of three separate Peer Reviews on the first party claim even though plaintiff had already exhausted $6400 of the $10,000 in available medical benefits and only six and a half months had passed since the accident. (Id. ¶¶ 41-49). The complaint alleges that the use of the peer reviews is directly related to the

handling of the UIM claim. Plaintiff asserts that the Peer Reviews were done to force her health care provides to stop treatment necessary for accident related injuries and to assist in the defense of the UIM claim. (Id. at ¶ 98).

On June 17, 2008, plaintiff's counsel demanded payment of UIM benefits. (Id. at ¶ 51). Plaintiff's counsel requested a copy of the policy from the defendant to determine whether coverage would be adjudicated by arbitration or through the courts. (Id.). Plaintiff's counsel received no response to the request for a copy of the policy and reiterated the request two more times. (Id. at ¶ ¶ 52, 55).

Plaintiff also avers that after it had decided not to pay for plaintiff's ongoing medical treatment, it contacted plaintiff's counsel to determine if plaintiff was still treating. Defendant indicated that this contact was made regarding the first party claim, but it was actually done to evaluate the UIM claim. (Id. at ¶ ¶ 53-54).

Plaintiff's complaint alleges that the defendant's conduct with regard to the medical benefits claim was made to limit the value of the UIM claim. (Id. at ¶ 65). The use of peer reviews was a further effort on defendant's part to convince plaintiff not to receive medical treatment, and thus assist the defense of the UIM claim. (Id. at ¶ 98).

Because defendant failed to provide plaintiff's counsel with a copy of the policy, despite repeated requests, plaintiff had to proceed with both a request for arbitration and a writ of summons filed in state court to initiate the UIM claim. (Id. at ¶ 61).

Lastly, plaintiff avers that defendant failed without a reasonable basis to pay the full UIM benefits. (Id. at ¶ 99).

6

Based upon these allegations from the complaint, it is clear that plaintiff does make claims based upon defendant's handling of the UIM claim. The complaint's bad faith action attacks defendant's handling of the UIM claim and certain actions it took with regard to the first-party medical benefits claim are alleged to be evidence of the defendant's bad faith in defense of the UIM claim. Merely because some of the bad faith evidence alleged by the plaintiff relates to first-party medical benefits claim does not mean that the bad faith claim with regard to the handling of the UIM claim is preempted. Thus, defendant's motion based upon MVFRL pre-emption will be denied.[2]

B. Bad faith for removing arbitration clause from the policy

Plaintiff's complaint asserts that the insurance policy at issue included an arbitration clause from the time of its inception in 1982 up to approximately June 24, 2007. (Doc. 4-2, Compl. ¶¶ 68-69). Defendant unilaterally removed the arbitration provision in June 2007 despite the fact that the provision was a material benefit under the policy that provided the plaintiff with an expedited and cost effective means of resolving UIM disputes. (Id. at ¶¶ 70-71). Defendant failed to provide notice to plaintiff of the ramifications of changing the policy language. The ramifications include: "significant increased expense for Plaintiff to pursue a UIM claim... [and] significant increased delay for Plaintiff to adjudicate a UIM claim." (Id. at ¶ 75). Defendant further failed to notify the plaintiff that "there is no established mechanism for resolution of a UIM claim under Pennsylvania

---

[2]As we find that the allegations of the plaintiff's complaint attack the defendant's handling of the plaintiff's UIM claim, we need not address the issue of whether a statutory bad faith claim could be made based directly on the failure to provide first-party medical benefits.

law or regulation for insurance [policies] that lack an Arbitration provision." (Id.)

Plaintiff asserts that defendant took these actions to delay payment of benefits and attempt settlement leverage by necessitating protracted expensive litigation. (Id. at ¶ 76).

Defendant's position is that the mere removal of the arbitration provision from the policy is not insurance bad faith, especially in light of the fact that the action took place months before the automobile accident that caused plaintiff's injuries. Additionally, defendant asserts that it was well within its rights to remove the arbitration provision from the insurance policy pursuant to Insurance Federation of Pennsylvania, Inc. v. Koken, 889 A.2d 550 (Pa. 2005). Koken holds that the Pennsylvania Department of Insurance does not have authority to require mandatory binding arbitration for uninsured motorist (UM) and underinsured motorist (UIM) coverage disputes. Id. at 555. In other words, an insurance policy need not contain an arbitration clause. After a careful review, we find it would be inappropriate to dismiss this part of the complaint at this time.

Defendant primarily relies upon Toy v. Metropolitan Life Ins. Co., 928 A.2d 186 (Pa. 2007). That case dealt with the issue of "whether a bad faith claim within the meaning of § 8371 may be premised on allegations that an insurer engaged in deceptive or unfair conduct in soliciting the insured to purchase an insurance policy." Id. at 195. The court held that the term "bad faith" encompasses action an insurer takes "when called upon to perform its contractual obligations of defense and indemnification or payment of a loss[.]" Id. at 970. Section 8371, the bad faith statute, applies only to such action taken "arising under an insurance policy." Id. (quoting

42 PENN. CONS. STAT. ANN. § 8371. Thus, because the soliciting the purchase of an insurance policy does not arise from an insurer's performance of contractual obligations or the defense and indemnification or payment of loss, a section 8371 claim cannot be premised on solicitation for the purchase of a policy. Id.

Defendant argues that in a similar manner the bad faith statute does not apply to removing an arbitration clause from an insurance policy. We are not convinced. The presence of an arbitration clause deals directly with the defendant's contractual obligations and clearly arise from the insurance policy. If, as plaintiff asserts, the defendant removed the clause without notification to the plaintiff in order to force favorable settlements of UIM claims, then a statutory bad faith claim might be established.[3] This situation is not analogous to the solicitation of a policy as addressed by Toy. Accordingly, the defendant's motion to dismiss based upon this argument will be denied.

## II. Count IV

Count IV of complaint asserts a cause of action for defendant's alleged failure to comply with the duties of good faith and fair dealing in handling plaintiff's insurance claims. Defendant asserts that this claim should be dismissed. Defendant's position is that Pennsylvania law does

---

[3]Defendant argues that these allegations do not support a claim upon which relief can be granted because the policy was changed before the accident in the instant case occurred. We disagree. If the change was done unilaterally without notice to the plaintiff there would be no way for the plaintiff to know about the change until a claim was made. Defendant has cited no authority for the proposition that an insurer cannot be liable for action taken by the insurer in bad faith in anticipation of a future claim under an insurance contract.

9

not recognize a separate common law remedy to an insured for violation of an implied duty of good faith and fair dealing with respect to the breach of an insurance contract. Rather, such a claim merges with the plaintiff's breach of contract claim. Plaintiff has asserted a breach of contract action in Count I of the complaint. (Doc. 4-2, Complaint, ¶ ¶ 83-95).

In support of its position, the defendant relies upon Toy, supra. Toy explained that Pennsylvania courts have refused to allow a common law "bad faith" tort action for an insured's violation of the implied covenant of good faith and fair dealing in the first party insurance claim setting. Toy, 928 A.2d at 198-99 (citing D'Ambrosio v. Pennsylvania Nat'l Mut. Casualty Ins. Co., 431 A.2d 966 (Pa. 1981)).

Plaintiff disagrees with the defendant's position and argues that the language in Toy is merely dicta. While plaintiff may be correct, it is dicta that explains Pennsylvania law and is persuasive on this point. Plaintiff also argues that this court has ruled differently on this very issue in the case of Guthrie Clinic v. Travelers, 3:00cv1173, 2000 WL 1853044, * 3 (M.D. Pa., December 18, 2000). We note, however, that Guthrie dealt with third party claims,[4] and was decided seven (7) years prior to Toy.

---

[4]Insurance claims can be broken down into the following two categories: first-party benefit claims, where an insurance company promises to pay an insured an amount for a loss for such things as property damage, death or illness and third-party claims where the insurance protects the insured from actions brought by persons who are third parties to the insurance contract, covering the cost of defense and indemnity. Toy, 928 A.2d at 196, n.12. Both Gutherie, supra and the case primarily relied upon by Gutherie, Birth Center v. St. Paul Cos., Inc., 727 A.2d 1144, (Pa.Super. Ct. 1999) dealt with third-party claims. The instant case, is a first-party claim.

For these reasons, we agree with the defendant and will dismiss Count IV of the plaintiff's complaint because plaintiff's claim of violation of the duty of good faith and fair dealing merges with her breach of contract claim.

### III. Count V

Count V of plaintiff's complaint asserts a cause of action for breach of fiduciary duty. Defendant argues that this claim should be dismissed pursuant to Rule 12(b)(6). First, defendant asserts that as the insurer's relationship with an insured is not a fiduciary relationship. We disagree with this contention. The Pennsylvania Superior Court has explained the fiduciary relationship as follows: "The insurer's duty of good faith, therefore, is contractual and arises because the insurance company assumes a fiduciary status by virtue of the policy's provisions which give the insurer the right to handle claims and control settlement." Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1231 (Pa. Super. Ct. 1994). Thus, there is a fiduciary relationship.

Next, the defendant argues that even if a fiduciary relationship exists, a cause of action for breach of that duty is redundant of the breach of contract claim. We agree. The same duty of good faith that is grounded in the insurer's fiduciary duty underlies the plaintiff's claim of bad faith. To have a separate cause of action for breach of fiduciary duty would be redundant. Moreover, courts have held that Pennsylvania does not recognize separate causes of action for breach of fiduciary duty. Ingersoll-Rand Equip. Corp. v. Transp. Ins. Co., 963 F. Supp. 452, 453 (M.D. Pa. 1997) ("In Pennsylvania, there is no separate tort-law cause of action against an insurer for negligence and breach of fiduciary duty[.]"). We will

thus dismiss Count V of plaintiff's complaint.

**IV. Count VI**

Plaintiff, in Count VI of the complaint, alleges that defendant acted negligently toward her. Defendant argues that this cause of action should be dismissed because under Pennsylvania law, there is no separate cause of action against an insurer for negligence in that it is merely a restatement of plaintiff's breach of fiduciary claim.

We agree. As noted above, in Ingersoll Rand, Pennsylvania does not recognize a separate cause of action for breach of fiduciary or negligence. Thus, the negligence claim will be dismissed.

Moreover, where the parties' relationship is covered by a contract, a separate tort action in negligence is barred by the "gist of the action doctrine." The Pennsylvania Superior Court has explained that the the "gist of the action" doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims." eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. Ct.2002). The difference between such claims is: "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." Id. *quoting* Bash v. Bell Tel. Co., 601 A.2d 825, 829 (1992).

In the instant case, the duties that plaintiff asserts the defendant owed to her, as addressed above, are imposed by entering into the insurance contract. Thus, the negligence claim is merely a re-dressed breach of contract claim, and the defendant's motion to dismiss it will be

granted.

## V. Count VII

Count VII of plaintiff's complaint avers that defendant negligently inflicted emotional distress upon the plaintiff. Defendant asserts that this cause of action should be dismissed for failure to state a cause of action upon which relief can be granted.

The Pennsylvania Supreme Court has expressly refused to adopt the approach that would allow for recovery of emotional distress. D'ambrosio, supra, *cited by* Rodgers v. Nationwide Mut. Ins. Co., 496 A.2d 811, 813 ( Pa. Super. Ct. 1985). Rodgers noted that the Supreme Court had reasoned that the statutes at that time provided sufficient means to deter bad faith insurance practices without need to supplement them with damages for emotional distress. Id. Since that time, the statutory deterrence is even higher as section 8371 was passed subsequent to the decision in Rodgers. Accordingly, the plaintiff's negligent infliction of emotional distress claim will be dismissed.

## VI. Paragraphs 66 through 82 - -redundant, immaterial, impertinent or scandalous

Defendant next argues that the following should be stricken from the complaint as redundant, immaterial, impertinent or scandalous:

1) Paragraphs 66 through 82 regarding the removal of the arbitration clause from the insurance policy;

2) Paragraph 125(f) of the complaint which avers that the defendant deliberately concealed from plaintiff that it (defendant) had removed the arbitration provision from the policy of insurance at issue without including any mechanism for the resolution of UIM claims under the policy term,

13

without notifying plaintiff; and

      3) All references in plaintiff's complaint to any alleged fiduciary duty owed by defendant to the plaintiff.

Under Rule 12(f) of the Federal Rules of Civil Procedure we may strike portions of a pleading "any redundant, immaterial, impertinent or scandalous matter."

> Courts possess considerable discretion under Rule 12(f) to dispose of motions to strike. See Kim v. Baik, 2007 WL 674715, *5 (D.N.J. Feb. 27, 2007). Motions to strike are disfavored, however, and "usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." Id. Striking matters from the record is a "drastic remedy to be resorted to only when required for the purposes of justice." Id.

In re Schering-Plough Corp./Enhance Securities Litig., No. 08-CV-397, 2009 WL 1410961*1 (D.N.J. May 19, 2009).

In the instant case, the portions of the complaint that defendant seeks to have stricken do have a relation to the controversy, and it will not cause prejudice to the defendant to leave them in the complaint. The motion to strike will therefore be denied.

**VI. Paragraphs 16, 86, 98 and 102(d)**

Lastly, defendant argues that plaintiff must provide a more definite statement with regard to paragraphs 16, 86, 98 and 102(d) for the defendant to make a responsive pleading.

A defendant may move for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. "Although the motion for a more definite statement continues to exist in Rule 12(e), it is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading."

Schaedler v. Reading Eagle Publication, Inc., 370 F.2d 795, 797 (3d Cir. 1967).  A review of the paragraphs that defendant complains about reveals that they are not so indefinite that it will not be able to frame a responsive pleading.

Paragraph 16 lists the serious injuries suffered by the plaintiff and defendant's request for a more definite statement is without merit with request to this paragraph.

Paragraph 86 asserts "Plaintiff, Suzanne Bukoski, has satisfied all of her obligations under the policy including but not limited to, all conditions precedent and conditions subsequent required in the process of her first party benefits claim, including medical payment coverage and underinsured motorist claim."

Paragraph 98 lists the various actions defendant took that evidences its bad faith in handling of the UIM claim.  (See supra at page 4).

Paragraph 102(d) asserts that the defendant has engaged in "other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding on the part of Plaintiff and other insureds."

Plaintiff should be able to form a response to all of these paragraphs. Thus, the motion for a more definite pleading will be denied.

**Conclusion**

For the reasons set forth above, the defendant's motion will be granted with respect to the dismissal of Counts IV, V, VI and VII.  It will be denied in all other respects.  In its reply brief, the defendant seeks permission under Rule 5 of the Federal Rules of Civil Procedure to appeal any order denying its motion to dismiss.  This request is denied.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUZANNE BUKOFSKI and DAVID BUKOFSKI, HER HUSBAND,<br>　　　　　Plaintiffs<br><br>　　v.<br><br>USAA CASUALTY INSURANCE COMPANY,<br>　　　　　Defendant | No. 3:08cv1779<br><br>(Judge Munley) |

## ORDER

**AND NOW**, to wit, this 9th day of June 2009, the defendant's motion to dismiss (Doc. 2) is **GRANTED** with respect to Counts IV, V, VI and VII of the complaint. It is **DENIED** in all other respects.

　　　　　　　　　　　　**BY THE COURT:**

　　　　　　　　　　　　**s/ James M. Munley**
　　　　　　　　　　　　**JUDGE JAMES M. MUNLEY**
　　　　　　　　　　　　**United States District Court**